IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
**Richmond Division**

TITANIA SMITH,

        Plaintiff,

v.                                                         Civil Action No. 3:12cv77

COMMONWEALTH OF VIRGINIA
DEPARTMENT OF AGRICULTURE
& CONSUMER SERVICES,

        Defendant.

## MEMORANDUM OPINION

Before the Court is Defendant the Commonwealth of Virginia Department of Agriculture and Consumer Services' (hereinafter the "Department") Motion to Dismiss Plaintiff's Complaint ("Motion to Dismiss"). (Docket No. 6.) Plaintiff Titania Smith, proceeding *pro se* and *in forma pauperis* in this matter, has responded to the Department's Motion to Dismiss (Docket No. 13), and the Department has filed a reply (Docket No. 17). The Court scheduled this matter for oral argument on June 25, 2012, but Smith failed to appear. The Court declines to reschedule oral argument because the facts and legal contentions are adequately presented in the materials before the Court and argument would not aid the decisional process. Accordingly, this matter is ripe for disposition. The Court exercises jurisdiction pursuant to 28 U.S.C. §§ 1331 and 636(c). For the reasons that follow, the Court will GRANT the Department's Motion to Dismiss.

### I. Standard of Review

#### A.    Rule 12(b)(1): Lack of Subject Matter Jurisdiction

In a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenging the Court's subject matter jurisdiction, the burden rests with the plaintiff, the party asserting

jurisdiction, to prove that federal jurisdiction is proper. *See Int'l Longshoremen's Ass'n v. Va. Int'l Terminals, Inc.*, 914 F. Supp. 1335, 1338 (E.D. Va. 1996) (*citing McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936); *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)).

A motion to dismiss pursuant to Rule 12(b)(1) can attack subject matter jurisdiction in two ways. First, a 12(b)(1) motion may attack the complaint on its face, asserting that the complaint fails to state a claim upon which subject matter jurisdiction can lie. *See Int'l Longshoremen's Ass'n*, 914 F. Supp. at 1338; *see also Adams*, 697 F.2d at 1219. In such a challenge, a court assumes the truth of the facts alleged by plaintiff, thereby functionally affording the plaintiff the same procedural protection he or she would receive under Rule 12(b)(6) consideration. *See Int'l Longshoremen's Ass'n*, 914 F. Supp. at 1338; *see also Adams*, 697 F.2d at 1219.

However, a 12(b)(1) motion may also challenge the existence of subject matter jurisdiction in fact, apart from the pleadings. *See Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991); *Int'l Longshoremen's Ass'n*, 914 F. Supp. at 1338; *see also Adams*, 697 F.2d at 1219. In such a challenge, no presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. *See Int'l Longshoremen's Ass'n*, 914 F. Supp. at 1338; *see also Adams*, 697 F.2d at 1219. If the facts necessary to determine jurisdiction are intertwined with the facts central to the merits of the dispute, the proper course of action is for the court to find that jurisdiction exists and then to resolve the factual dispute on the merits unless the claim is made solely for the purpose of obtaining jurisdiction, or is determined to be wholly insubstantial and frivolous. *Adams*, 697

F.2d at 1219; *United States v. North Carolina*, 180 F.3d 574, 580 (4th Cir. 1999); *Bell v. Hood*, 327 U.S. 678, 682-83 (1946).

### B. 28 U.S.C. § 1915: Proceeding *In Forma Pauperis*

The federal *in forma pauperis* statute grants indigent plaintiffs the privilege of commencing an action in federal court without prepaying administrative costs. 28 U.S.C. § 1915(a)(1). To prevent abuse of this privilege, however, the Court "shall dismiss" a complaint filed *in forma pauperis* if the complaint "fails to state a claim on which relief may be granted [o]r seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2); *see Eriline Co. S.A. v. Johnson*, 440 F.3d 648, 656 (4th Cir. 2006). The standards for dismissal under § 1915(e)(2)(B) mirror those under Rule 12(b)(6). *De'Lonta v. Angelone*, 330 F.3d 630, 633 (4th Cir. 2003).

### C. Rule 12(b)(6): Failure to State a Claim

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (*citing* 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *see also Martin*, 980 F.2d at 952. This principle applies only to factual allegations, however, and "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 566 U.S. 662, 679 (2009).

The Federal Rules of Civil Procedure "require[] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (omission in original) (*quoting Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Plaintiffs cannot satisfy this standard with complaints containing only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Bell Atl. Corp.*, 550 U.S. at 555 (citations omitted). Instead, a plaintiff must allege facts sufficient "to raise a right to relief above the speculative level," *id.* (citation omitted), stating a claim that is "plausible on its face," *id.* at 570, rather than merely "conceivable." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (*citing Bell Atl. Corp.*, 550 U.S. at 556). Therefore, in order for a claim or complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (*citing Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002); *Iodice v. United States*, 289 F.3d 270, 281 (4th Cir. 2002)).

### D. The Court Declines to Consider Extrinsic Documents

"If, on a motion under Rule 12(b)(6) . . . , matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d); *see Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 260-61 (4th Cir. 1998); *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985). However, "a court may consider official public records, documents central to plaintiff's claim,

4

and documents sufficiently referred to in the complaint [without converting a Rule 12(b)(6) motion into one for summary judgment] so long as the authenticity of these documents is not disputed." *Witthohn v. Fed. Ins. Co.*, 164 F. App'x 395, 396-97 (4th Cir. 2006) (*citing Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001); *Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 618 (4th Cir. 1999); *Gasner v. Cnty. of Dinwiddie*, 162 F.R.D. 280, 282 (E.D. Va. 1995)).

Here, Smith has attached numerous exhibits to her Response to Defendant's Motion to Dismiss. Aside from her EEOC charge of discrimination, Smith's Complaint does not sufficiently reference or incorporate the remaining documents. Thus, to consider these documents, the Court would need to convert the motion to dismiss into one for summary judgment. Because the Department's motion can be decided on the pleadings alone, and considering the early stage of this case, the Court excludes from consideration the extrinsic documents submitted by Smith and declines to convert the motion to dismiss into a motion for summary judgment.

## II. Background

### A. Facts[1]

On October 10, 2007, Smith became a permanent employee with the Department, having completed a three-year term as a contract employee. In May 2009, Smith "began to experience a family crisis," and Corina Muse, Smith's supervisor, loaned Smith $400. (Compl. 1.)[2] In September 2009, Smith e-mailed Muse, indicating she did not know if or when she would be

---

[1] The following facts are taken from the Complaint. (Docket No. 3.) For purposes of the pending motion to dismiss, the Court will assume the well-pleaded factual allegations in the Complaint to be true and will view them in the light most favorable to Smith. *Matkari*, 7 F.3d at 1134.

[2] Because the Complaint does not contain page numbers, the Court refers to the pages as numbered by CM/ECF.

able to return the money to Muse. On October 29, 2009, Smith received an excellent evaluation from Muse. In November 2009, Smith's bank account was "frozen," and she informed Muse again that she did not know when she would be able to return the money to Muse. (*Id.*)

On December 8, 2009, Smith received a written warning from Muse for leaving the building without informing Muse, an event that allegedly occurred in November. Muse also began to harass Smith for her "password after hours" (*id.*), and Smith "continue[d] to have a lot of problems with [Muse]" (*id.* at 2). Smith alleges that Muse was compassionate and friendly until Smith informed Muse that Smith would be unable to pay her back. Smith alleges that Muse "down right started blackmailing [her] and railroading [her] out of the position" because Muse "was mad about" Smith's inability to pay her back. (*Id.* at 3.) Smith voiced her concerns about Muse's conduct "several times" to Human Resources. (*Id.* at 2.) Smith returned the money to Muse in March 2010.

In January 2010, Smith became pregnant, and Kristy McCabe, Muse's supervisor, "began to harass [Smith] shortly after." (*Id.*) McCabe harassed Smith for taking too long to walk deposits to the bank even though Smith was nine months pregnant and walking in 100 degree weather. McCabe did not harass another pregnant employee in the same position as Smith.

At some point, Smith's teenage son who had a mental illness came to live with her, and she missed a lot of work to attend her son's court hearings and school appointments. Smith alleges she also has a mental illness and that she provided the Department with a letter from her doctor about her mental state and her current stressors. Smith spoke with human resources several times "in regards to what [she] was dealing with." (*Id.* at 2.) Muse also knew of Smith's current stressors and agreed to "create something to help [Smith] remember [her] job" but never did. (*Id.*) Smith contends the Department should have provided her with accommodations for

6

her disability. Smith also claims the Department failed to tell her she could use leave under the Family Medical Leave Act ("FMLA")[3] for her son's mental illness. However, the Department informed Smith she could take a leave of absence without pay and later granted her "administrative leave for accompanying [her] son to court." (*Id.*)

Smith alleges that the Department "harass[ed] [her] unnecessarily and they knew [her] medication had been lowered tremendously due to the pregnancy as well as the extra stressors of [her] son coming and dealing with his mental state." (*Id.* at 2-3.) Ultimately, the Department terminated Smith a week before her scheduled maternity leave and a day before a scheduled appointment with a psychiatrist. Smith contends, "If [Muse] was going to try to fire about 400 dollars she could have kept her money." (*Id.* at 3.)

The Department contends it terminated Smith for misuse of state time and poor work performance. However, the Department never told Smith she could not use her computer for personal reasons, and Smith "had been misusing the computer since" the beginning of her employment. (*Id.* at 2.) Smith alleges that other employees, including a pregnant employee, also misused state time, but were not terminated or otherwise disciplined. Although she admits her "work began to go down and down," she does not know if she made the mistakes or not because Muse kept obtaining Smith's password. (*Id.*) Smith also contends that she could not complete her tasks in a timely manner because her computer often froze, a problem of which the Department had knowledge. Smith contends that "everything was fine" and that she was an "excellent employee up until" she informed Muse she would be unable to pay her back. (*Id.* at 1, 2.)

---

[3] 29 U.S.C. § 2601 *et seq.*

Smith filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), and the EEOC issued her a "Dismissal and Notice of Rights" letter dated December 6, 2011. (Compl. Ex. 1.)

### B. Procedural History

On February 28, 2012, Smith filed a Complaint against the Department. Her Complaint lacks clarity and precision and fails to delineate specific causes of action. However, both the Supreme Court of the United States and the United States Court of Appeals for the Fourth Circuit have instructed courts to afford *pro se* filings a liberal construction. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Noble v. Barnett*, 24 F.3d 582, 587 n.6 (4th Cir. 1994).

> Principles requiring generous construction of *pro se* complaints are not, however, without limits. . . . It does not require those courts to conjure up questions never squarely presented to them. District judges are not mind readers. Even in the case of *pro se* litigants, they cannot be expected to construct full blown claims from sentence fragments . . . .

*Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

Keeping these principles of construction in mind, the Court liberally construes Smith's Complaint to assert the following claims against the Department: (1) pregnancy discrimination under Title VII of the Civil Rights Act;[4] (2) retaliation under Title VII; (3) failure to accommodate under Title I of the Americans with Disabilities Act ("ADA");[5] (4) wrongful termination under Title I of the ADA; (5) retaliation under Title V of the ADA;[6] and, (6) violation of the FMLA. Smith seeks reinstatement, back pay, and compensatory damages.

---

[4] 42 U.S.C. § 2000e *et seq.*

[5] 42 U.S.C. § 12111 *et seq.*

[6] 42 U.S.C. § 12201 *et seq.*

On March 26, 2012, the Department filed its Motion to Dismiss.[7] The Department makes the following arguments: (1) Smith's Title VII claims should be dismissed for failure to state a claim; (2) Smith's ADA claims should be dismissed as barred by sovereign immunity and/or for failure to state a claim; (3) Smith's FMLA claim should be dismissed as barred by sovereign immunity and/or for failure to state a claim; and, (4) the entirety of Smith's Complaint should be dismissed with prejudice.

On April 18, 2012, the parties consented to the jurisdiction of a magistrate judge and met to schedule an initial pretrial conference. Smith appeared *pro se* and indicated she desired to retain counsel. The Court delayed scheduling the initial pretrial conference for a month. In an effort to keep the case moving forward, the Court issued an order dated May 18, 2012 scheduling the matter for an initial pretrial conference at 10:00 a.m. on May 30, 2012. The Court advised Smith that if she had retained counsel, counsel must make a notice of appearance and attend the initial pretrial conference, and that if she had not yet retained counsel, she must appear *pro se* at the initial pretrial conference.

Smith failed to attend the May 30, 2012 initial pretrial conference, and no attorney appeared on her behalf. Counsel for Defendant, however, provided the Court with a letter from Smith dated May 22, 2012 which he had received via facsimile on May 25, 2012. On the afternoon of May 30, 2012, the Clerk's Office received a copy of the same letter and filed it as Smith's Motion to Continue. (Docket No. 21.) In her letter, Smith indicated she had relocated to Michigan and requested to continue the hearing until June 13, 2012 or June 25, 2012, both dates on which she intended to return to Richmond.

---

[7] The Department's Motion to Dismiss included proper *Roseboro* notice, advising Smith of the necessity of filing a proper response. *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975).

Because the Court received the motion after it had already held the initial pretrial conference, the Court denied it as moot. However, in recognition of Smith's *pro se* status and in order to "secure the just, speedy, and inexpensive determination" of this action, the Court accommodated Smith's schedule and entered a June 1, 2012 Order, scheduling the matter for a hearing on the pending Motion to Dismiss at 10:00 a.m. on June 25, 2012. (Fed. R. Civ. P. 1.) The Court admonished Smith that she risked dismissal for failure to prosecute if she failed to appear, *pro se* or through counsel, at the June 25, 2012 motion hearing.

Smith failed to appear at the motion hearing on June 25, 2012.[8]

### III. Analysis

A. **Smith's Complaint Fails to State a Claim for Title VII Pregnancy Discrimination or Retaliation**

Title VII makes it unlawful for an employer to "discriminate against any individual with respect to his [or her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, *sex*, or national origin." 42 U.S.C. § 2000e-2(a)(1) (emphasis added). "The terms 'because of sex' or 'on the basis of sex' include, but are not

---

[8] The Court received a call just twenty-five minutes prior to the June 25 hearing. The speaker identified herself as a professional knowledgeable about Smith's circumstances, and indicated Smith could not attend the hearing for medical reasons. The Court informed the professional that any response from the Court would come in the form of a written opinion or order mailed to Smith at her address of record.

A facsimile purporting to be sent by that same professional arrived on June 25th in the afternoon. It indicates that Smith has had medical difficulties requiring hospitalization since June 19th, but that she will be released in the next day or two.

The facsimile requests that the Court reschedule her hearing. Smith has been informed by Chambers that any requests for court action must come in the form of a written motion filed with the Clerk's Office and must comply with the Federal Rules of Civil Procedure. This request to reschedule her hearing has been placed before the Court in an improper fashion.

Because Smith has now failed to appear for a scheduled hearing a second time without leave, because this Court has adequate information to rule on the record, and because the Court will give Smith the opportunity to seek leave to amend, the Court declines to grant another delay via a rescheduled hearing.

limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions . . . ." *Id.* § 2000e(k). Courts analyze pregnancy discrimination claims in the same fashion as any other sex discrimination claim brought pursuant to Title VII. *DeJarnette v. Corning Inc.*, 133 F.3d 293, 297 (4th Cir. 1998).

Here, Smith has not alleged the existence of any direct evidence of intentional discrimination or retaliation. Because she alleges no direct evidence, her Complaint must present a plausible prima facie case of pregnancy discrimination and retaliation under the burden-shifting scheme established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973). "While a plaintiff is not charged with pleading facts sufficient to prove her case, as an evidentiary matter, in her complaint, a plaintiff *is* required to allege facts that support a claim for relief." *Bass*, 324 F.3d at 765.

To assert a claim for pregnancy discrimination, Smith must sufficiently allege the following elements: "'(1) she is a member of a protected class; (2) she suffered adverse employment action; (3) she was performing her job duties at a level that met her employer's legitimate expectations at the time of the adverse employment action; and (4) the position remained open or was filled by similarly qualified applicants outside the protected class.'" *Miles v. Dell, Inc.*, 429 F.3d 480, 485 (4th Cir. 2005) (*quoting Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 285 (4th Cir. 2004) (en banc)).

Smith's Complaint fails to sufficiently allege the third and fourth elements. Smith's Complaint contains no factual allegations suggesting that she performed her job duties at a level that met the Department's legitimate expectations at the time she suffered from adverse employment actions. Instead, Smith admits that she misused her computer and that her work performance continued "to go down and down." (Compl. 2, 3.) Smith's Complaint also fails to

allege that her position remained open or was filled by similarly qualified applicants outside the protected class. While Smith alleges that another pregnant employee in her position did not receive similar harassment, this allegation in no way supports a reasonable inference of pregnancy discrimination. While her Complaint alleges problems with her supervisors, these problems do not reasonably appear to have any relation to her pregnancy. *See Bass*, 324 F.3d at 765. Instead, her allegations suggest these problems stemmed from her inability to repay Muse.

To assert a claim for retaliation under Title VII, Smith must sufficiently allege the following elements: "(1) engagement in a protected activity; (2) adverse employment action; and (3) a causal link between the protected activity and the employment action." *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010). Smith's Complaint fails to allege the first element because it contains no allegations that she participated in an ongoing investigation or proceeding or opposed any discriminatory practices.[9] *See Coleman*, 626 F.3d at 191. Her Complaint contains no allegations suggesting she "utiliz[ed] informal grievance procedures," "stag[ed] informal protests," or "voic[ed] one's opinions in order to bring attention to an employer's discriminatory activities." *Laughlin*, 149 F.3d at 259. While Smith alleges that she spoke to and voiced her concerns to human resources, nothing indicates she voiced concerns about employment practices made unlawful by Title VII. Instead, her Complaint indicates she voiced concerns about Muse's treatment of her after her inability to repay a loan. Smith fails to allege that she opposed conduct which actually violated Title VII or which she reasonably believed violated Title VII. *See Peters v. Jenney*, 327 F.3d 307, 321 (4th Cir. 2003). Smith's Complaint also fails to allege the third element and contains no facts suggesting that any adverse

---

[9] While her Complaint makes reference to an EEOC charge of discrimination, no factual allegations suggest that she filed this EEOC charge prior to her termination. *See Brown v. Carilion Health Sys.*, No. 7:05cv487, 2005 WL 2931848, at *1 (W.D. Va. Nov. 3, 2005).

employment activity was causally connected to protected activity. *Spain v. Va. Commonwealth Univ.*, No. 3:09cv266, 2009 WL 2461662, at *9 (E.D. Va. Aug. 11, 2009).

Because her Complaint fails to present factual allegations giving rise to a plausible prima facie case of pregnancy discrimination or retaliation, the Court will DISMISS Smith's Title VII pregnancy discrimination claim and retaliation claim for failure to state a claim.[10]

### B. Smith's ADA Claims Must Be Dismissed as Barred by Sovereign Immunity and for Failure to State a Claim

#### 1. Sovereign Immunity Serves as a Partial Bar to Smith's ADA Claims

"The Eleventh Amendment bars suit in federal court against an unconsenting state and any governmental units that are arms of the state unless Congress has abrogated the immunity." *Coleman*, 626 F.3d at 191 (citing *Alden v. Maine*, 527 U.S. 706, 755-57 (1999)); *Va. Office of Protection & Advocacy v. Va. Dep't of Educ.*, 262 F. Supp. 2d 648, 655 (E.D. Va. 2003). To abrogate this immunity, "Congress must unequivocally declare its intent to abrogate and must act pursuant to a valid exercise of its power." *Coleman*, 626 F.3d at 191 (citing *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 55 (1996)).

The Supreme Court of the United States has held that the Eleventh Amendment bars suits against states to recover money damages under Title I of the ADA. *Bd. of Trs. of the Univ. of Ala. v. Garrett*, 531 U.S. 356, 360 (2001). Nor did the Commonwealth of Virginia consent to be

---

[10] To the extent Smith's Complaint could be construed to assert a pregnancy harassment claim, the Court would likewise dismiss it for failure to state a claim. Smith fails to allege facts giving rise to conduct "sufficiently severe or pervasive to alter the conditions of her employment and create an abusive work environment." *Ocheltree v. Scollon Prods., Inc.*, 335 F.3d 325, 331 (4th Cir. 2003). Although she repeatedly alleges harassment in a conclusory fashion, she fails to assert facts establishing the plausibility of that allegation. *Coleman*, 626 F.3d at 190-91. Absent such support, her conclusory allegations of harassment do not rise above speculation. *Id.* at 191.
Smith also fails to allege that any harassment was based on the condition of pregnancy. *Causey v. Balog*, 162 F.3d 795, 801 (4th Cir. 1998). Instead, her Complaint suggests that any harassment was due to her failure to repay Muse's loan, and not based on her pregnancy.

sued under the ADA. "[A]n award of back pay would be tantamount to a monetary award against the Commonwealth. Such an award would violate the Eleventh Amendment, and thus, it is not permissible." *Allen v. Coll. of William & Mary*, 245 F. Supp. 2d 777, 788 (E.D. Va. 2003). Thus, to the extent Smith seeks monetary damages and/or back pay for her failure to accommodate and wrongful termination claims under Title I of the ADA, her claims must be dismissed as barred by sovereign immunity.

Although neither the Supreme Court of the United States nor the Fourth Circuit has addressed whether Congress validly abrogated sovereign immunity under Title V of the ADA, the circuit courts and district courts that have addressed this issue have found that Eleventh Amendment immunity applies to retaliation claims brought under Title V of the ADA when such claims are predicated on alleged violations of Title I of the ADA. *See, e.g., Demshki v. Monteith*, 255 F.3d 986, 988 (9th Cir. 2001); *Chiesa v. N.Y. State Dep't of Labor*, 638 F. Supp. 2d 316, 323 (N.D.N.Y. 2009); *Shabazz v. Tex. Youth Comm'n*, 300 F. Supp. 2d 467, 473 (N.D. Tex. 2003); *Tinzie v. Dep't of Workforce Servs.*, No. 4:11cv683, 2012 WL 1739859, at *3 (E.D. Ark. May 16, 2012); *Davis v. Vt., Dep't of Corr.*, No. 2:11cv164, 2012 WL 1269123, at *2-3 (D. Vt. Apr. 16, 2012); *Caudill v. S.C. Criminal Justice Acad.*, No. 3:10-2291, 2011 WL 4479594, at *2 (D.S.C. Aug. 11, 2011). The Court finds the reasoning in these cases persuasive. Because Smith's retaliation claim is predicated on alleged violations of Title I of the ADA, the doctrine of sovereign immunity bars her claim to the extent she seeks monetary damages and/or back pay.

The Court must next determine whether the present suit can fairly be characterized as one "for prospective injunctive or declaratory relief designed to remedy ongoing violations of federal law." *Bragg v. W. Va. Coal Ass'n*, 248 F.3d 275, 292 (4th Cir. 2001). "In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit [against a State], a

court need only conduct a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Md. Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (internal quotation marks and citations omitted) (second alteration in original). To the extent Smith alleges wrongful termination and retaliation, her claims under the ADA arguably allege ongoing violations of federal law and seek prospective relief. *Brown v. Lieutenant Governor's Office on Aging*, 697 F. Supp. 2d 632, 635 n.5 (D.S.C. 2010); *Crawford v. Dep't of Corr. Educ.*, No. 3:11cv430, 2011 WL 5975254, at *5 (E.D. Va. Nov. 29, 2011). Moreover, because she challenges the propriety of her discharge, the equitable relief she seeks in the form of reinstatement of her employment has a sufficient nexus to her alleged harm. *See Ostergren v. Cuccinelli*, 615 F.3d 263, 288-89 (4th Cir. 2010) ("'Once a constitutional violation is found, a federal court is required to tailor the scope of the remedy to fit the nature and extent of the constitutional violation.'" (*quoting Dayton Bd. of Educ. v. Brinkman*, 433 U.S. 406, 420 (1977))). Thus, the doctrine of sovereign immunity does not bar Smith's ADA claims to the extent she seeks reinstatement.

### 2. Smith's Complaint Fails to State a Claim for Failure to Accommodate, Wrongful Termination, or Retaliation Under the ADA

Regardless, Smith's Complaint fails to state a claim for relief under the ADA. Title I of the ADA prohibits certain employers from "discriminat[ing] against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). The ADA requires employers to "mak[e] reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the

operation of the [employer's] business . . . ." *Id.* § 12112(b)(5)(A). The ADA defines "disability" to include: "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." *Id.* § 12102(1). Title V of the ADA prohibits employers from "discriminat[ing] against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a).

Smith has failed to sufficiently allege she had a disability covered by the ADA, and thus, her Complaint fails to state a claim for failure to accommodate, wrongful termination, or retaliation under the ADA.[11] Although Smith alleges in a conclusory fashion that she has "a

---

[11] In the absence of direct evidence, Smith's Complaint must state facts sufficient to allege the following elements. For failure to accommodate, Smith must allege: "'(1) that [s]he was an individual who had a disability within the meaning of the statute; (2) that the [employer] had notice of [her] disability; (3) that with reasonable accommodation [s]he could perform the essential functions of the position . . . ; and (4) that the [employer] refused to make such accommodations.'" *Rhoads v. FDIC*, 257 F.3d 373, 387 n.11 (4th Cir. 2001) (*quoting Mitchell v. Washingtonville Cent. Sch. Dist.*, 190 F.3d 1, 6 (2d Cir. 1999)) (omission and second and fourth alteration in original).

For wrongful termination, she must allege: "'(1) [s]he is within the ADA's protected class; (2) [s]he was discharged; (3) at the time of [her] discharge, [s]he was performing the job at a level that met [her] employer's legitimate expectations; and (4) [her] discharge occurred under circumstances that raise a reasonable inference of unlawful discrimination.'" *Rhoads*, 257 F.3d at 387 n.11 (*quoting Haulbrook v. Michelin N. Am., Inc.*, 252 F.3d 696, 702 (4th Cir. 2001)).

Finally, for retaliation, her Complaint must properly allege: "(1) that she has engaged in conduct protected by the ADA; (2) that she suffered an adverse action subsequent to engaging in the protected conduct; and (3) that there was a causal link between the protected activity and the adverse action." *Freilich v. Upper Chesapeake Health, Inc.*, 313 F.3d 205, 216 (4th Cir. 2002).

Not only does Smith's Complaint fail to properly allege she suffered from a disability under the ADA, but she also fails to sufficiently allege other elements. For the same reasons discussed above in analyzing her Title VII claims, Smith's allegations do not sufficiently establish that she performed her job at a level that met the Department's legitimate expectations, that circumstances existed giving rise to a reasonable inference of disability discrimination, that

mental illness" and "extra stressors" and that her doctor provided documentation of such, the Complaint contains no other allegations or facts showing that this condition qualified her as disabled. (Compl. 2, 3.) Smith did not identify the mental condition and made no allegations as to the extent of her mental condition or the effect it has on major life activities. 42 U.S.C. § 12102(1); *see Adams v. High Purity Sys., Inc.*, No. 1:09cv354, 2009 WL 2391939, at *6 (E.D. Va. July 2, 2009). Nor has Smith alleged facts to plausibly demonstrate that the Department regarded her as disabled under the ADA. 42 U.S.C. § 12102(1); *Bateman v. Am. Airlines, Inc.*, 614 F. Supp. 2d 660, 671 (E.D Va. 2009). Smith's Complaint thus fails to properly state a claim for violations of the ADA.

### C.     Smith's Complaint Fails to State a Claim Under the FMLA

Under the FMLA, an eligible employee is entitled to take leave to "care for the spouse, or a son, daughter, or parent, of the employee, if such spouse, son, daughter, or parent has a serious health condition" or "[b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1). The FMLA defines "serious health condition" as "an illness, impairment, or physical or mental condition that involves—(A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider." *Id.* § 2611(11).

The FMLA makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." *Id.* § 2615(a)(1). The FMLA also makes it unlawful for an employer to retaliate against any individual for opposing any practice made unlawful or for participating in any proceedings under

---

she engaged in protected activity under the ADA, or that her protected activity was causally connected to the adverse employment action. *See supra* Part III.A.

FMLA. *Id.* § 2615(a)(2), (b). The FMLA creates a private right of action for equitable relief or money damages against any employer that violates the FMLA. *Id.* § 2617(a)(1).

Smith appears to base her claim under the FMLA on the family-care provision under 29 U.S.C. § 2612(a)(1)(C). (*See* Compl. 2 ("I should have been paid administrative leave for accompanying my son to court on a regular.").) Although the Fourth Circuit has held that Eleventh Amendment immunity applies to suits alleging violations of the FMLA's self-care provision under § 2612(a)(1)(D), *Coleman*, 626 F.3d at 194, the Supreme Court of the United States has held that Congress validly abrogated the states' Eleventh Amendment immunity for claims alleging violation of the FMLA's family-care provision under § 2612(a)(1)(C). *Nev. Dep't of Human Res. v. Hibbs*, 538 U.S. 721, 737 (2003). Thus, sovereign immunity does not bar her FMLA claim to the extent she relies on the family-care provision.

Regardless, Smith's Complaint fails to state a claim under the FMLA. Her Complaint fails to allege that she attempted to take leave to care for her son who had a serious health condition. Instead, she asserts she missed work due to her son's school appointments and court hearings. Further, although she makes the conclusory allegation that her son had a mental illness, her Complaint insufficiently alleges that his mental illness required continuing treatment by a health care provider. *Id.* § 2611(11). These insufficiencies in her Complaint require the Court to dismiss her FMLA claim for failure to state a claim.

### D. Leave to Amend

"[T]he Fourth Circuit has stated that a court should consider granting plaintiffs, particularly *pro se* plaintiffs, leave to amend if it dismisses a complaint based on [Rule] 12(b)(6)." *Smith v. Virginia*, No. 3:08cv800, 2009 WL 2175759, at *9 (E.D. Va. July 16, 2009) (*citing Ostrzenski v. Seigel*, 177 F.3d 245, 252-53 (4th Cir. 1999)).

Amendment should be refused only if it appears to a certainty that plaintiff cannot state a claim. The better practice is to allow at least one amendment regardless of how unpromising the initial pleading appears because except in unusual circumstances it is unlikely that the court will be able to determine conclusively on the face of a defective pleading whether plaintiff actually can state a claim.

*Ostrzenski*, 177 F.3d at 253.

To the extent sovereign immunity bars Smith's ADA claims, such claims will be dismissed with prejudice. Dismissal with prejudice and without leave to amend is proper because such deficiency would be incurable through amendment. *See McLean v. United States*, 566 F.3d 391, 400 (4th Cir. 2009). However, following the "better practice" espoused in *Ostrzenski*, the Court will dismiss the remainder of Smith's claims without prejudice. *Ostrzenski*, 177 F.3d at 253. If Smith seeks to amend her complaint, she must file an appropriate motion, attaching any proposed amended complaint, within fourteen (14) days of the date of entry hereof. If Smith fails to seek amendment in the proper fashion and in a timely manner, the Court will dismiss the entirety of Smith's case with prejudice.

### IV. Conclusion

For the foregoing reasons, the Court will GRANT the Department's Motion to Dismiss. Accordingly, the Court will order the following:

1. Smith's pregnancy discrimination claim under Title VII will be DISMISSED WITHOUT PREJUDICE.

2. Smith's retaliation claim under Title VII will be DISMISSED WITHOUT PREJUDICE.

3. Smith's failure to accommodate claim under Title I of the ADA will be DISMISSED WITH PREJUDICE to the extent she seeks monetary damages and back pay. Smith's failure to accommodate claim under Title I of the ADA will be DISMISSED WITHOUT PREJUDICE to the extent she seeks reinstatement.

4. Smith's wrongful termination claim under Title I of the ADA will be DISMISSED WITH PREJUDICE to the extent she seeks monetary damages and

      back pay. Smith's wrongful termination claim under Title I of the ADA will be DISMISSED WITHOUT PREJUDICE to the extent she seeks reinstatement.

5. Smith's retaliation claim under Title V of the ADA will be DISMISSED WITH PREJUDICE to the extent she seeks monetary damages and back pay. Smith's retaliation claim under Title V of the ADA will be DISMISSED WITHOUT PREJUDICE to the extent she seeks reinstatement.

6. Smith's claim under the FMLA will be DISMISSED WITHOUT PREJUDICE.

7. If Smith seeks to amend her complaint, she must file an appropriate motion, attaching any proposed amended complaint, within fourteen (14) days of the date of entry hereof. Failure to do so in a timely and proper manner will result in the dismissal of this case WITH PREJUDICE.

An appropriate Order shall issue.

                                                        /s/
                                          M. Hannah Lauck
                                      United States Magistrate Judge

Richmond, Virginia
Date: June 25, 2012